In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-1542

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER K. CHRISTOPHEL,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 4:20-CR-40069-JPG-1 — **J. Phil Gilbert**, *Judge*.

ARGUED JANUARY 23, 2024 — DECIDED FEBRUARY 14, 2024

Before ROVNER, BRENNAN, and PRYOR, *Circuit Judges*.

ROVNER, *Circuit Judge*. Christopher Christophel was convicted by a jury of knowingly attempting to persuade, induce, or entice a minor to engage in sexual activity. *See* 18 U.S.C. § 2422(b). On appeal, he argues that the district judge erred by giving a jury instruction that misstated the elements of the crime. However, because the jury instructions, when considered as a whole, accurately summarized the law, and because

in any case Christophel was not prejudiced by any error, we affirm the judgment.

FBI agents conducted an undercover operation to identify persons soliciting sex from minors. As part of the operation, a federal agent, posing as a 15-year-old girl named Halle, posted "looking for a ride" in the "hookup" section of Craigslist. On June 26, 2020, Christopher Christophel responded to the post. Referring to Halle's age and her interest in a "ride," Christophel said: "That's jail time." But he nevertheless continued the conversation. He asked whether Halle looked "young," and Halle responded with pictures of a young-looking woman. Christophel replied, "You're cute," and later, "I bet all the boys are after you."

Christophel and Halle then began discussing where they would meet and the sexual acts they would perform. Christophel asked Halle what she wanted to do with him, and after she suggested oral sex, he asked if she had "a place" to meet because he could not let his "roommates find out about" her. Halle replied that she was at her parents' house, about an hour from Christophel's location. She added that her parents were away. Christophel told her that he could not "guarantee anything [would] happen," but he asked for her phone number in order to continue their conversation. Halle responded with a number used by the FBI.

Christophel then moved the conversation to text messages. He told Halle that although he was meeting with friends that evening, he could "maybe come over" afterward, but not if she wanted only to talk. Halle confirmed that she was "looking for sex," and Christophel replied, "I think that could work." Christophel asked if Halle had protection, and Halle told him to bring some. After exchanging several more

messages, Christophel told Halle that he was "kinda on the fence," and he asked if she was willing to "just … hang out" because he was "picturing feds waiting at [her] house like on tv." Halle responded that she would "prefer to have fun," and that this was "real, not tv." Christophel asked for and obtained Halle's address and then told her that he wanted to shower with her. A short time later, however, Christophel called off the planned meetup, explaining that he was paranoid because she was a minor, which he acknowledged was "a big deal" and "[n]ot a slap on the wrist."

Christophel and Halle continued to text over the next two weeks (some messages were benign, others sexual), and on July 14, the two made plans to meet. Christophel texted Halle that day, "I want you," and the conversation then turned graphic as he described in detail how he wanted to have sex with her. Christophel asked if he could talk to her on the phone, and she responded, "I can call when [you're] serious." Christophel replied: "You want serious. How about we meet tomorrow." Halle agreed, explaining that she was presently staying at her grandmother's house, which was approximately a two-hour drive away from where Christophel was located, and that they could be alone together there.

On July 15, Christophel told Halle he was on his way but that he was "gettin[g] nervous." At the time Christophel was telling Halle he was close by, FBI agents were conducting surveillance in the vicinity of the proposed meeting location. Upon arrival, Christophel parked at a liquor store near the address that Halle had specified and as Christophel walked toward the address, federal agents arrested him. The agents searched his car and found condoms, two loaded handguns, a mask, rope, and a handwritten note that read, "Do you love

me?" with checkboxes for "Yes" and "No." Christophel admitted to an agent that he had messaged Halle and that he had wanted to see her. He said he had been hoping that she was not really 15 years old, and that if she was a minor, he would have left without having sex.

Christophel was indicted on one count of attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b), and the case proceeded to trial. At the close of evidence, the district judge gave two jury instructions relevant here. One instruction, which the parties had labeled Court's Jury Instruction No. 13 ("Instruction 13"), listed the elements of the crime:

> In order for you to find the defendant guilty of this charge, the Government must prove each of the following elements beyond a reasonable doubt:
>
> 1. The defendant used a facility or means of interstate commerce to knowingly attempt to persuade, induce, or entice an individual to engage in sexual activity.

Later, the judge gave another instruction, which the parties had labeled Government's Proposed Instruction No. 5 ("Instruction 5")—the instruction at issue on this appeal. Instruction 5 clarified that the government did not have to prove that Christophel intended to have sex with Halle, just that he attempted to entice Halle to have sex with him:

> A person attempts to commit enticement of a minor if he: (1) knowingly takes a substantial step toward committing enticement of a minor; (2) with the intent to commit enticement of a minor. The substantial step must be an act that

> strongly corroborates that the defendant in-
> tended to carry out the crime of enticement of a
> minor.
>
> In order to meet its burden in this case, the Gov-
> ernment must prove the defendant took a sub-
> stantial step toward causing a person he be-
> lieved to be a minor to [assent] or agree to en-
> gage in the criminal offense of aggravated crim-
> inal sexual abuse under Illinois law. The Gov-
> ernment is not required to prove that the de-
> fendant actually intended to engage in illegal
> sexual activity [with] that person.

The judge gave Instruction 5 over Christophel's objection to the first sentence of the second paragraph. His contention was that, by broadly criminalizing the act of "causing" a minor to assent to sex, the instruction misstated the elements of the crime of enticement. A person might "cause" a minor to "assent or agree" to sex in many ways, Christophel argued, but the statute proscribed only persuading, inducing, entic-ing, and coercing. Christophel requested that the judge re-place the word "causing" in Instruction 5 with the statutory language, but the judge ruled that the instruction was an ac-curate statement of law as written. The district judge added, "Until the Seventh Circuit tells me this is an erroneous in-struction, I think it's an accurate statement of the law, and I'm going to give it." A jury later found Christophel guilty, and the judge sentenced him to the mandatory minimum of 120 months' imprisonment.

On appeal, Christophel argues only that the district judge erred in giving Instruction 5. Christophel contends that In-struction 5 described "a broader category of behavior than

that proscribed by the statute." Specifically, Christophel says that the statutory phrase, "knowingly persuades, induces, entices, or coerces," 18 U.S.C. § 2422(b), prohibits only "an active attempt to reach a mental state in the minor," whereas the phrase in Instruction 5, "causing … a minor to assent or agree," includes acts that unintentionally lead a minor to agree to sex.

We review de novo whether jury instructions fairly and accurately summarize the law. *United States v. Key*, 889 F.3d 910, 912 (7th Cir. 2018). In so doing, however, we give the district judge "substantial discretion with respect to the precise wording of jury instructions so long as the final result, read as a whole, completely and correctly states the law." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Because jury instructions must be considered as a whole, even if one instruction falls short on clarity, a court may consider the jury properly directed where the totality of the instructions sets forth the proper requirements for conviction. *Key*, 889 F.3d at 913. In *Key*, a jury found the defendant guilty of trafficking a minor with the intent that the minor engage in prostitution. *Id.* at 911–12. The district judge had correctly instructed the jury that the minor's "consent" to "engage in prostitution" was "not a defense" to the crime. *Id.* at 913. But the judge also instructed that it was "irrelevant" if the minor "otherwise voluntarily participated"—language that we noted was unclear if read out of context of the first sentence. *Id.* Still, we decided that the second phrase was legally accurate "when read in connection with the rest of the instruction." *Id.* And we concluded that because the defendant had presented evidence of the minor's consent, the judge had

reasonably tried to clarify that consent was not a defense to the crime. *Id.*

Similarly, Instruction 5, considered in its entirety, did not misstate the law. The first paragraph of Instruction 5 described the offense as "knowingly" taking a substantial step with the "intent" to commit enticement of a minor. That language provides context to resolve the potential ambiguity in the next paragraph, which refers to the offense as "causing … a minor to assent." Although when read out of context, "causing … assent" might refer to unintentional conduct, here it is best understood as a shorthand reference to the specific conduct just described in the first paragraph: knowingly taking a substantial step with the intent to commit the offense of enticement of a minor. (This interpretation parallels a common rule used in statutory construction: The specific governs the general. *See, e.g.*, *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017).) And as in *Key*, because the jury heard evidence that Christophel would have left and not had sex with Halle upon verifying her age, Instruction 5 helped to clarify that his purported lack of intent to have sex was not an available defense. *See United States v. Berg*, 640 F.3d 239, 251 (7th Cir. 2011) ("[T]he government's burden was to prove beyond a reasonable doubt that [the defendant] intended to persuade, induce, or entice … a minor to engage in sexual activity—not that he intended to engage in sexual activity.").

We also note Christophel's concession that Instruction 13 accurately states the elements of the crime by using the precise statutory language ("persuade, induce, or entice") about the required mens rea. Thus, the jurors here could not have found that Christophel only unintentionally caused Halle to assent to sex—a possible interpretation of the sentence at

issue in Instruction 5—because Instruction 13 separately required the jurors to find that Christophel knowingly attempted to persuade, induce, or entice Halle. *See United States v. Carson*, 870 F.3d 584, 602 (7th Cir. 2017) (affirming judgment because, although one jury instruction suggested a lower mens rea, another instruction requiring a higher mens rea "mitigat[ed] any concern that the jurors may have held [the defendant] accountable" under the lower mens rea).

In the course of considering Christophel's objections to Instruction 5, the district judge noted that he had given the instruction before, and "[u]ntil the Seventh Circuit tells me this is an erroneous instruction, I think it's an accurate statement of the law, and I'm going to give it." We stress that, although the instructions here were accurate *as a whole*, the specific sentence at issue in Instruction 5 is potentially confusing and may be erroneous in the context of another case. Moreover, the purpose of Instruction 5—informing the jury that the government need not prove that the defendant intended to have sex with the minor—is better achieved, and the instruction made clearer, after removing the sentence at issue in this appeal. But we note again that we need not reverse a jury finding because a "jury instruction could have been clearer," provided the instructions, when read as a whole, contain legally accurate directions to the jury. *Key*, 889 F.3d at 913. And in this case they did.

In any case, Christophel was not prejudiced by any purported error. "Even if the instruction contains an error or misguides the jury, we reverse a jury verdict only if the error prejudiced a litigant." *Calhoun*, 408 F.3d at 379. Christophel argues that Instruction 5 was prejudicial because it undermined his defense to the jury that he never persuaded, induced, or

enticed Halle to have sex. In his view, by relying on Instruction 5, the jury convicted him because it found that he had unintentionally caused Halle to assent to sex. But for Christophel to show prejudice, he must present a "reasonable probability that but for the error"—here, the lowered mens rea in Instruction 5—"the outcome of the trial would have been different." *Carson*, 870 F.3d at 603 (citation omitted).

He cannot. Given the overwhelming evidence that Christophel acted with the requisite intent to persuade, induce, or entice, any error would have been harmless. There is no reasonable probability that the jury could have seen evidence such as the messages which were exchanged throughout their correspondence and in particular the messages that were exchanged on July 14, in which Christophel and Halle made specific plans to have sex the next day, and still conclude that Christophel's enticement was unintentional. In his messages, Christophel explicitly described his sexual interest in Halle and then told her his plan to fulfil that interest by driving nearly two hours to meet her while her guardians were away. *See Berg*, 640 F.3d at 250 (arranging to meet constitutes a "substantial step" for purposes of attempted enticement of a minor). He then followed through and drove to the address that she had provided. Christophel's argument that he did not intend for these actions to cause Halle to agree to have sex with him has no support in the evidence.

Accordingly, we AFFIRM the judgment.